# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

CHARLES HARTSELL JR,

      Plaintiff,

         v.                     CASE NO. 3:20-CV-588-MGG

K DIETZ, et al.,

      Defendants.

## OPINION AND ORDER

Charles Hartsell, Jr., an incarcerated individual represented by counsel, proceeds against Classification Officer Kiana Dietz, Classification Officer Timothy Lechlitner, and Correctional Officer Matthew Myers in their individual capacities for compensatory and punitive damages for failing to protect him from attack by gang members in his cell at the Elkhart County Correctional Facility ("ECCF" or "Elkhart Jail") on January 29, 2020. Mr. Hartsell also asserts failure-to-intervene claims against Officers Dietz and Lechlitner because they did not prevent the attack by assigning him to safe housing. Pending and ripe before the Court are Mr. Hartsell's Motion to Compel [DE 46], Mr. Hartsell's Motion for Partial Summary Judgment [DE 49], and Defendants' Motion for Summary Judgment [DE 52].

Through his Motion to Compel, Mr. Hartsell demands that Defendants produce information about their financial condition arguing it is relevant to his punitive damages claims. Mr. Hartsell also seeks summary judgment on Defendants' affirmative defenses of mitigation, contributory negligence, incurred risk, and good faith as legally

inconsistent with his claims. Lastly, Defendants' summary judgment motion argues that Mr. Hartsell's claims should be dismissed because he did not exhaust his administrative remedies before filing this lawsuit; no evidence of recklessness or callous indifference exists to support his claims for punitive damages; and qualified immunity shields them from money damages. As Defendants' Motion for Summary Judgment could dispose of all of Mr. Hartsell's' claims, or narrow the scope of any remaining claims, it will be addressed first.

This Court retains subject matter jurisdiction in this action under 28 U.S.C. § 1331 based on Mr. Hartsell's constitutional claims brought pursuant to 42 U.S.C. § 1983. With consent of the parties pursuant 28 U.S.C. § 636(c)(1), the undersigned may enter a ruling in this matter. [DE 30]. For the following reasons, Defendants' motion for summary judgment is granted in part and Mr. Hartsell's motion for partial summary judgment and his motion to compel are granted.

## I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DE 52]

### A.   Relevant Background

The following facts are largely not in dispute[1]. Any disputed facts are either not material or will be addressed in the substantive analysis below.

In April 2019, Mr. Hartsell—a member of the Aryan Brotherhood gang and an ATF informant—was held at the St. Joseph County Jail on a federal weapons charge. Mr. Hartsell agreed to cooperate and testify against a fellow gang member, which

---

[1] Defendants explicitly state that certain facts are not disputed for summary judgment purposes despite challenging those facts, as asserted by Mr. Hartsell, as beyond the scope of, or distinguishable from, other evidence in the record. [*See, e.g.*, DE 68 at ¶¶ 148, 160, 162, 164, 169]

became known at the St. Joseph County Jail, putting Mr. Hartsell in danger. As a result, he was moved to ECCF on November 29, 2019. Mr. Hartsell told the ECCF intake officer that he was going to testify against an Aryan Brotherhood member and therefore needed to be separated for his protection. Mr. Hartsell was initially housed in a single-person cell until his formal housing assignment could be as made a few days later.

On December 2, 2019, Mr. Hartsell was interviewed by Defendant Classification Officer Kiana Dietz. Mr. Hartsell similarly informed Officer Dietz of his concerns for his safety as the result of his intended testimony against an Aryan Brotherhood member. The Classification Interview form prepared by Officer Dietz indicates that Mr. Hartsell did not request protective custody, had been an informant, had known enemies in the jail naming Tyrone Miller, and that he was a member of the Aryan Brotherhood. According to Mr. Hartsell, he informed Officer Dietz that he needed to be separated from any Aryans and that she said there were no Aryans at the jail, and he would be housed appropriately. Mr. Hartsell was assigned to Ward C12 in general population where he encountered a known Aryan Brotherhood gang member almost immediately.

Subsequently, Mr. Hartsell spoke to Defendant Correctional Officer Matthew Myers about his housing safety concerns. Officer Myers told him that housing assignments and classifications were not grievable[2]. Mr. Hartsell did not file a grievance regarding his housing concerns.

---

[2] Defendants dispute Mr. Hartsell's contention but also indicate that the statement does not create a dispute of material fact precluding summary judgment. [DE 68 at 19–20, ¶ 188].

In the middle of January 2020, Mr. Hartsell was transported to court where he testified, as anticipated, against a gang member in a criminal matter. Upon his return to the jail, he remained housed in Ward C12 after communicating his concerns again to Officers Dietz and Lechlitner.

On January 29, 2020, four inmates entered Mr. Hartsell's cell. Fearful, Mr. Hartsell hit the emergency call button in his cell and reached a correctional officer identified only as John Doe I in the Amended Complaint. Officer Doe did not act to protect Mr. Hartsell and he was attacked in his cell after refusing to turn over his commissary. The attackers were members of the Dirty White Boys gang, which is affiliated with, but subordinate to, the Aryan Brotherhood. Mr. Hartsell was sent to the medical ward where he stayed through February 3, 2020. At his request, Mr. Hartsell was assigned to protective custody and moved to Ward K43 where he was housed on the second floor.

Before being reassigned to Ward K43, Mr. Hartsell had submitted grievances related to particular property issues but never filed a grievance related to his housing assignment or the conduct of Officers Dietz, Lechlitner, or Myers. Yet on March 4, 2020, Mr. Hartsell submitted a grievance form in which he summarized the timeline of events leading to his attack and his reassignment to protective custody. Through the grievance, Mr. Hartsell asked to be moved out of the second floor of Ward K43 because a member of the Dirty White Boys was also housed there. In response to the grievance, the jail moved Mr. Hartsell to the first floor of Ward K43 one day later March 5, 2020.

### B.    Analysis

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

### 1.    John Doe Defendant

The parties agree that Defendant John Doe I cannot remain a party to this action because he remains unnamed and any claim against him now would be time-barred. *See Forman v. Richmond Police Dep't*, 104 F.3d 950, 965 (7th Cir. 1997). Therefore, Defendants' Motion for Summary Judgment is granted as to Mr. Hartsell's Count IV Failure to Protect claim against John Doe I.

### 2.      Exhaustion of Administrative Remedies

The Prison Litigation Reform Act prohibits prisoners from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). A prisoner can be excused from exhausting if the grievance process was effectively unavailable. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). When prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered available. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. The parties do not dispute that the ECCF grievance policy and procedures were included in the Inmate Handbook available to inmates, including Mr. Hartsell, on kiosks in each ward. There were two such kiosks in Ward C12 where Mr. Hartsell was

housed from December 3, 2019, until the attack on January 29, 2020. The kiosks were located on the wall opposite the cells and were available for all to use.

Officers Dietz, Lechlitner, and Myers argue that Mr. Hartsell's failure-to-protect, and failure-to-intervene, claims should be dismissed because Mr. Hartsell did not exhaust the administrative remedies available to address his concerns about his housing assignment and safety at ECCF. *See Perez*, 182 F.3d at 535. Mr. Hartsell, however, contends that the grievance process was effectively unavailable to him after Officer Myers told him that housing and classification issues were not grievable.

"An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011). Since *Pavey*, several courts have addressed situations where prison officials or staff misrepresented the grievance process to inmates.

In *Thomas v. Reese*, a prisoner was excused from exhaustion when he was confined to segregation, lacked access to the handbook setting forth the grievance procedure, and was told by an officer that he could not file a grievance. 787 F.3d 845, 847 (7th Cir. 2015). Administrative remedies were found unavailable for another prisoner when the defendant failed to produce any evidence on summary judgment to rebut the prisoner's verified complaint alleging that his prison case manager told him there was "no longer a reason to file a grievance" and that he "had to file a tort claim." *Ashlock v. Myers*, No. 3:11-CV-00204-JD-CAN, 2012 WL 4017799, at *2 (N.D. Ind. Sept. 12, 2012). Similarly, another prisoner successfully defended against an exhaustion

defense when he spoke "to senior jail officers . . . and [was] told *not* to file a grievance because the officers" understood his problem and would be resolving it without a formal grievance. *Swisher v. Porter Cnty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014). In fact, the *Swisher* court specifically stated that "[w]hen a jail official invites noncompliance with a procedure the prisoner is not required to follow the procedure" and "[w]hen jail personnel mislead inmates about how to invoke the procedure the inmates can't be blamed for failing to invoke it." *Id.*

Yet a prisoner cannot be excused from his PLRA obligation to exhaust administrative remedies without sufficient evidentiary support for any asserted misrepresentation by prison staff. In *LaMar v. Lenover*, this Court considered a prisoner's argument that administrative remedies were unavailable to him because " 'he was told inmates cannot grieve staff performance and conduct.' " CAUSE NO. 3:21-CV-398 DRL-MGG, 2022 WL 2104179, at *2 (N.D. Ind. June 10, 2022) (quoting the record presented to the Court on summary judgment). The prisoner's argument did not rebut the defendant's exhaustion defense because he offered nothing to show who told him he could not grieve. *Id.* The defendant had also produced evidence that the prisoner had been given access to the applicable grievance policy, "which list[ed] 'actions of individual staff' as grievable conduct." *Id.*

Here, Mr. Hartsell testified at his deposition that he had spoken to Officer Myers around December 2, 2019, when he was first being placed in Ward C12. [DE 55-3 at 12]. Mr. Hartsell testified that he told Officer Myers: "where they had placed me was

unsafe." [*Id.*].[3] According to Mr. Hartsell, Myers then told him that "classifications weren't grievable" without saying anything else and Mr. Hartsell said nothing else to Officer Myers. [*Id.*].

At his deposition, Officer Myers testified that he recalled speaking to Mr. Hartsell for the first time in the medical ward after the January 29, 2020, attack. [DE 55-5 at 18]. That said, no question was posed to him that would elicit any definitive admission or denial about whether he had spoken to Mr. Hartsell before the attack. Yet while answering general questions about the grievance policy and his regular interactions with inmates, Officer Myers stated that housing assignments and classification issues were grievable. [*Id.* at 32]. Even so, Defendants have designated no evidence that directly contradicts Mr. Hartsell's version of the facts—that Officer Myers told him in a one-on-one conversation that classifications were not grievable. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). At best, Officer Myers' testimony suggests that he did not recall the conversation that Mr. Hartsell alleges. *Cf. Swisher*, 769 F.3d at 555. Defendants also replied to Mr. Hartsell's Statement of Additional Material Facts stating that the allegation that Officer Myers said classifications were not grievable, and any dispute resulting from Officer Myers's deposition testimony, "does not create a dispute of material fact for summary judgment purposes." [DE 68 at 19–20].

---

[3] In his Declaration in opposition to Defendants' motion for summary judgment, Mr. Hartsell expanded on his conversation with Officer Myers. Defendants contend that the Declaration also changes some details from his deposition testimony. Mr. Hartsell's deposition testimony alone is enough to resolve the question of whether administrative remedies were available. Therefore, Mr. Hartsell's Declaration need not be considered here. [*See* DE 68 at 18–20].

On this record, Mr. Hartsell has provided evidence in the form of his testimony specifying the details of when he was told and who told him that classifications were not grievable. *Cf. LaMar*, 2022 WL 2104179, at *2. So, Mr. Hartsell's allegation is not mere speculation. *See Trade Fin. Partners*, 573 F.3d at 407. Additionally, Officer Myers' testimony does not directly contradict Mr. Hartsell's testimony. Construing these facts in the light most favorable to Mr. Hartsell, as the non-moving party, Mr. Hartsell's version of the facts—that Officer Myers told him classification matters were not grievable—must be credited. *See Heft*, 351 F.3d at 282. And that statement contradicted the Inmate Handbook, which stated that "[i]nmates who wish to dispute their classification assignment should do so through the inmate grievance process." [DE 55-1 at 22]. In other words, Officer Myers misrepresented the grievance policy and process to Mr. Hartsell. *Cf. Swisher*, 769 F.3d at 555. It does not matter that Mr. Hartsell had used the grievance policy previously because no one misrepresented the policy to him as to those particular concerns. Thus, the ECCF grievance process became effectively unavailable to Mr. Hartsell with regard to his housing assignment and safety concerns underlying his failure-to-protect and failure-to-intervene claims. Accordingly, Defendants' exhaustion defense fails.

Having found the ECCF grievance procedure unavailable to Mr. Hartsell, the Court need not consider Mr. Hartsell's other arguments including whether he was excused from exhaustion because he reasonably feared that grieving would result in physical danger to him and whether the ECCF's grievance policy was too opaque or confusing for anyone to navigate through the process successfully.

### 3.  Qualified Immunity

"Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "The plaintiff carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014).

"To overcome a defendant's invocation of qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (internal quotation marks omitted). The court retains discretion to determine which prong of the qualified immunity analysis should be considered first. *Id.* (citing *Pearson*, 555 U.S. at 236).

A clearly established right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). A plaintiff can show that a right was clearly established by "show[ing] either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017) (quotation omitted). A case need not be "directly on point, but existing

11

precedent must have placed the statutory or constitutional question beyond debate."

*Mullenix*, 577 U.S. at 12. Defendants here argue that no precedent establishes that:

> a reasonable person would have recognized a violation of the law for housing Dirty White Boys gang members with an Aryan Brotherhood gang member who was testifying in a drug trial of [another Aryan Brotherhood member] where the inmate did not warn of a concern regarding the Dirty White Boys gang especially when the inmate had around two months to communicate concerns about being housed with the Dirty White Boys via a kiosk at the far end of his ward that [the inmate] otherwise used for grieving and communicating with jail staff.

[DE 54 at 25]. Defendants focus on the undisputed fact that Mr. Hartsell never mentioned the Dirty White Boys gang, named any of its members as known enemies in the jail, or attributed his safety concerns to the connection between the Dirty White Boys and the Aryan Brotherhood in his communications with ECCF staff.

While the parties do not agree on the specifics of Mr. Hartsell's conversations with Officers Dietz, Lechlitner, and Myers, Defendants do not dispute that Mr. Hartsell made his affiliation with the Aryan Brotherhood, and his plans to testify against another Aryan Brotherhood gang member, known to the ECCF intake officer and Officer Dietz. Yet Defendants note that Mr. Hartsell was not attacked by Aryan Brotherhood members and that he filed no housing-related grievances while he was housed in Ward C12. Defendants thus contend that no reasonable officer would have perceived that placing Mr. Hartsell in Ward C12 would have violated his rights.

Mr. Hartsell cites three Seventh Circuit cases considering inmate-on-inmate violence involving gangs. In *Sinn v. Lemmon*, the court reversed a grant of qualified immunity finding that a reasonable officer would have been on notice of the risk of

harm to an inmate, who was unaffiliated with any gang, after receiving a letter from the inmate expressing concern about a possible second attack based on "racial differences" with no mention of gangs or individuals who he feared after the first attack. 911 F.3d 412, 416–17 (7th Cir. 2018). In *Gevas v. McLaughlin*, the court rejected the defendants' qualified immunity defense to a failure-to-protect claim finding that the inmate's complaints to prison officials about threats from cellmates based on accusations of snitching with only a vague statement "about his gang" established the defendants' knowledge that the inmate was at risk of harm and their duty to protect him. 798 F.3d 475, 481, 484–85 (7th Cir. 2015). In *Santiago v. Lane*, the court found qualified immunity unavailable to the defendants given their undeniable duty to the inmate after an attack at a different prison, transfer to the instant prison, notifications from both the inmate and the first prison of ongoing threats because he was a snitch, and a second attack by the gang he feared. 894 F.2d 218, 219 (7th Cir. 1990).

Defendants note facts in Mr. Hartsell's situation distinguishable from those in *Sinn*, *Gevas*, and *Santiago*. In *Sinn*, the court found it reasonable for the defendant corrections officer to have known the particular gang that threatened the plaintiff even though he did not mention the gang by name because he had been attacked by a gang previously. 911 F.3d at 421–22. According to Defendants here, they did not know that the Dirty White Boys posed a threat to Mr. Hartsell. In *Gevas*, the plaintiff inmate identified the specific inmate who was threatening him. 798 F.3d at 485. Here, Mr. Hartsell named only one known enemy in the jail and that person never attacked him. In *Santiago*, the plaintiff inmate informed the defendants that he was under threat by a

13

particular gang who later attacked him because the defendants failed to act after receiving assurances from a different gang that the plaintiff was not under threat. 894 F.2d at 220. In Mr. Hartsell's case, he expressed fears about one gang but was attacked by another. Based on these distinctions, Defendants conclude that no reasonable officer in their shoes—having been informed of Mr. Hartsell's fears of retaliation from the Aryan Brotherhood for testifying against one its own—would have known Mr. Hartsell was threatened by members of the Dirty White Boys.

The law does not require Mr. Hartsell to present a completely analogous case to show that he had a clearly established right to be protected from attack at ECCF. Mr. Hartsell only needs to identify a "reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand . . . ." *Canen*, 847 F.3d at 412. Mr. Hartsell has done just that. There is no doubt that Defendants would have been able to take different steps to protect Mr. Hartsell had they known more details about the threat to him. Yet Defendants did know that Mr. Hartsell feared retaliation for testifying against an Aryan Brotherhood gang member. Moreover, Officers Dietz and Lechlitner both testified that their professional experience made them aware of the connection between the Aryan Brotherhood and the Dirty White Boys even though Mr. Hartsell never mentioned the Dirty White Boys to them. [DE 55-4 at 16; DE 55-6 at 27–28]. Confronting issues arising from gang relations at the jail regularly as part of their job, Defendants did not need to be informed of every detail of the risk to Mr. Hartsell. He communicated his fear of retaliation for snitching on a gang member to Defendants who then had a clear duty to protect him. *Cf. Sinn*, 911 F.3d

at 421–22; *Gevas*, 798 F.3d at 485; *Santiago*, 894 F.2d at 220. Plaintiff has therefore demonstrated that he held a clearly established right to be free from attack at ECCF.

No determination can yet be made as to whether Defendants violated Mr. Hartsell's clearly established right. *See Green*, 868 F.3d at 633. As a result, the ultimate decision on Defendants' qualified immunity defense depends on and cannot be separated from factual disputes regarding Mr. Hartsell's claims against them. *See Smith v. Finkey*, 10 F.4th 725, 729 (7th Cir. 2021) (holding that factual disputes integral to the merits of a plaintiff's claim precludes summary judgment on qualified immunity grounds). As a result, Defendants are not entitled to qualified immunity for purposes of summary judgment.

### 4.    Punitive Damages Claim

Defendants also move for summary judgment on Mr. Hartsell's punitive damages claim in the event that their motion is denied as to their affirmative defenses of exhaustion and qualified immunity.

"[T]he purpose of punitive damages is . . . to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct. *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996) (internal citations omitted). A jury may award punitive damages in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Defendants contend that they are entitled to summary judgment on Mr. Hartsell's punitive damages claim because there is no evidence to support an inference that their conduct amounted to reckless or callous indifference. Defendants argue that Mr. Hartsell's allegations "require the connection of dots between the fact[s]" that Mr. Hartsell testified against a member of the Aryan Brotherhood and that members of another gang were also a threat. [DE 54 at 22]. Defendants maintain that there is no evidence to support an inference that Defendants should have known Mr. Hartsell was threatened by members of the Dirty White Boys or that members of the Dirty White Boys gang would attack Mr. Hartsell on behalf of the Aryan Brotherhood gang. Without evidence of this knowledge, Defendants maintain that the resulting attack on Mr. Hartsell cannot be traced to any callous or reckless disregard on their part.

But "evaluations of motive and intent are generally inappropriate on a motion for summary judgment[.]" *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999) (internal citations omitted). It is true that courts "have recognized an exception to this rule where a plaintiff fails to produce evidence raising a material question of fact regarding . . . the reckless or callous nature of the defendant's actions." *Id.* That is not the case here. As explained, Defendants do not dispute that they knew Mr. Hartsell was affiliated with the Aryan Brotherhood, that he planned to testify against another Aryan Brotherhood gang member, and that he feared retaliation for doing so. Likewise, Officers Dietz and Lechlitner both testified that they aware of the connection between the Aryan Brotherhood and the Dirty White Boys through their work at the jail. [DE 55-4 at 16; DE 55-6 at 27–28]. Based on this, a reasonable jury could conclude that, Defendants showed

reckless or callous disregard for Mr. Hartsell's constitutional right to be protected from harm. Therefore, for the same reasons Defendants are not entitled to qualified immunity, their request for summary judgment as to punitive damages fails.

### C.   Conclusion as to Defendant's Motion for Summary Judgment

For the reasons stated and detailed above, Defendant's motion for summary judgment must be **GRANTED in PART** and **DENIED in PART**. [DE 52].

## II.   MR. HARTSELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DE 49]

Mr. Hartsell moves for summary judgment on four of the fifteen affirmative defenses raised by Defendants in their answer to his operative first amended complaint. Mr. Hartsell contends that these affirmative defenses are legally inconsistent with his failure-to-protect and failure-to-intervene claims under § 1983:

> 2. Plaintiff's damages, if any, must be reduced based on any failure of Plaintiff to mitigate his damages.
>
> 3. Plaintiff's damages, if any, proximately resulted from the contributory negligence chargeable to Plaintiff; as such, Plaintiff is barred from any recovery herein.
>
> 4. Plaintiff is barred from recovering herein since Plaintiff's damages, if any, proximately resulted from Plaintiff voluntarily incurring a known and obvious risk.
> . . .
> 8. At all times relevant to the allegations in Plaintiffs' First Amended Complaint, Defendants acted in good faith.

[DE 28 at 19-20].

Characterizing these affirmative defenses as fitting "a square peg in a round hole[,]" Mr. Hartsell's motion largely challenges the legal sufficiency of these affirmative defenses rather than their factual content. [DE 50 at 8]. In this instance, other courts have found that the "appropriate procedural vehicle" is a motion to strike the

affirmative defenses under Federal Rule of Civil Procedure 12(f) rather than a motion for summary judgment. *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 729228, at *5 (N.D. Ill. Mar. 6, 2012); *see also Petroff Trucking Co. v. Envirocon, Inc.*, No. 05-CV-414-WDS, 2006 WL 2938666, at *2 (S.D. Ill. Oct. 13, 2006) (finding that the court "could not possibly grant summary judgment on the affirmative defenses" because the motion referred to no facts outside the pleadings, thus construing it as a motion to strike). Therefore, Mr. Hartsell's motion for partial summary judgment is construed as a Rule 12(f) motion to strike and will be considered accordingly[4].

Under Rule 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they unnecessarily consume scarce judicial resources, *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006), and "disserve the interest of judicial economy." *Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007). Affirmative defenses are only stricken "when they are insufficient on the face of the pleadings" and "will not be struck if they . . . present questions of law or fact." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991). But a motion to strike removing "unnecessary clutter" is considered as a method to expedite a matter and should be granted. *Oswalt v. Rekeweg*, No. 117CV00278TLSSLC, 2017 WL 5151205, at *1 (N.D. Ind. Nov. 7, 2017). Whether to strike an affirmative defense under Rule 12(f)

---

[4] The Court also observes, however, that a motion to strike should have been filed within 21 days of service of Defendants' answer. *See* Fed. R. Civ. P. 12(f)(2). But without any objection from Defendants as to the form or timing of Mr. Hartsell's motion, and consistent with the procedures of other courts, the Court will continue.

is within the court's "sound discretion." *Livesay v. Nat'l Credit Sys., Inc.*, No. 4:22-CV-19-TLS-JEM, 2022 WL 1210728, at *1 (N.D. Ind. Apr. 25, 2022) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992)).

At the outset, the Court observes that none of the disputed affirmative defenses contain any factual allegations or further argument, so it is unclear whether and to what extent Defendants seek to assert them. *See Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1164, 1167 (S.D. Ind. 1992) ("At any stage of a proceeding, the defendant bears the burden of raising and proving its affirmative defenses."). This deficiency alone could warrant striking the defenses. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (observing that an affirmative defense must consist of more than "bare bones conclusory allegations"). But in the interest of justice, the Court will also consider the parties' arguments as to the sufficiency of these defenses.

The Court begins with Defendants' good faith affirmative defense. Defendants contend that: "[a]t all times relevant to the allegations in Plaintiffs' First Amended Complaint, Defendants acted in good faith." [DE 28 at 20]. Mr. Hartsell contends that a government official's good faith is no longer recognized as an affirmative defense to a § 1983 claim, making this defense inapposite. Defendant contends that Mr. Hartsell's motion should be denied because a finding of good faith would foreclose a finding of any "reckless or callous indifference," *see Green*, 942 F.3d at 781, which is the mental state required to assess punitive damages.

While it may be true that a finding of good faith could preclude the mental state of recklessness or callousness on punitive damages, that does not make good faith a

properly pled affirmative defense here. An affirmative defense is a pleading that consists of "a defendant's assertion of [additional] facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (internal citation omitted); *see also Biglands v. Maysville Reg'l Water & Sewer Dist., Cause No. 1:12-CV-00067*, 2012 WL 2130555, at *1 (N.D. Ind. June 12, 2012) (citations omitted). Put another way, an affirmative defense "requires a responding party to *admit* a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability (or perhaps from full liability)." *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006) (emphasis in original) (internal citation omitted).

Here, Defendants contend that a finding of good faith defeats the intent element for punitive damages. Thus, Defendants seek to use good faith to disprove Mr. Hartsell's claim rather than admit to their allegations and assert that they are not liable for another reason. Based on this, Defendants have not appropriately pled as an affirmative defense, and Mr. Hartsell's motion should be granted as to their good faith defense. *See Do It Best Corp. v. Heinen Hardware, LLC*, No. 1:13-CV-69, 2013 WL 3421924, at *2 (N.D. Ind. July 8, 2013) (observing that "whether the matter is properly pled as an affirmative defense" is the first consideration on a motion to strike).

Next, Mr. Hartsell challenges that Defendants' affirmative defenses of contributory negligence and incurred risk:

> 3. Plaintiff's damages, if any, proximately resulted from the contributory negligence chargeable to Plaintiff; as such, Plaintiff is barred from any recovery herein.

4. Plaintiff is barred from recovering herein since Plaintiff's damages, if any, proximately resulted from Plaintiff voluntarily incurring a known and obvious risk.

[DE 28 at 19]. Mr. Hartsell contends that these are inapposite to § 1983 claims because such claims are based on intentional conduct. First, as to contributory negligence, Mr. Hartsell points to *Santiago*, 894 F.2d at 224 ("[I]t is well settled that contributory negligence is not a defense to an allegation of intention or reckless conduct."). *See also Huspon v. Corizon Med. Serv.*, No. 217CV00062JRSDLP, 2019 WL 110947, at *6 (S.D. Ind. Jan. 4, 2019) (finding that contributory negligence is not a defense to an Eighth Amendment deliberate indifference claim); *Gidarisingh v. Pollard*, 571 Fed. Appx. 467, 471 (7th Cir. 2011) (finding that contributory negligence did not apply to a failure-to-protect claim). Defendants, however, contend that recent authority establishes that there is also an objective component to Fourteenth Amendment claims like Mr. Hartsell's, which "may" make the instant defense appropriate. [DE 56 at 2]. In support, Defendants point to *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) as well as *Pittman by and through Hamilton v. Cnty. Of Madison, Ill.*, 970 F.3d 823, 828 (7th Cir. 2020).

But the Court cannot find Defendants' reliance on *Kemp* and *Pittman* persuasive. As contended by Mr. Hartsell, both cases still require intentional conduct for liability. *See Kemp*, 27 F.4th 497 ("We hold . . . that the defendant officer must intend to carry out a certain course of actions . . . ."; and *Pittman*, 970 F.3d at 827 (observing that the "first inquiry [is] whether the defendants acted 'purposefully, knowingly, or perhaps even recklessly.' . . . encompass[ing] all states of mind except for negligence and gross negligence.") (internal citation omitted). And, as discussed above, courts have explicitly

21

held that the showing of intentional or reckless conduct required in § 1983 claims precludes a defense of contributory negligence. *Santiago,* 894 F.2d at 224. Finally, this aligns with another court in this circuit addressing the admissibility of contributory negligence evidence for a § 1983 claim. *See Lacy v. McArdle,* No. 20-CV-1014-JDP, 2023 WL 4581759, at *8 (W.D. Wis. July 18, 2023) (granting the plaintiff's motion in limine seeking to exclude evidence that the plaintiff's health habits and decisions contributed to his injuries). Without more, the Court must grant Mr. Hartsell's motion as to Defendants' contributory negligence affirmative defense.

As to incurred risk, Mr. Hartsell again maintains that this defense is inapplicable because his claims require intentional conduct. In response, Defendants maintain that it is a valid affirmative defense because recklessness creates liability under § 1983. In support, Defendants rely on *Slade v. Bd. of Sch. Directors of City of Milwaukee,* 702 F.3d 1027, 1031 (7th Cir. 2012), in which the court stated that "the defense of assumption of risk is applicable to constitutional torts and not just to common law ones." But, as Mr. Hartsell contends, the court in *Slade* made this statement in the context of a state-created danger case to explain how much danger a state actor can create before incurring liability. *See id.* ("The fact that the government encourages a person to expose himself to danger . . . does not create liability under the due process clause just because the danger materializes. This is merely recognition that the defense of assumption of risk is applicable to constitutional torts.") (internal citations omitted). Without more from Defendants as to how *Slade* supports their contentions, the Court cannot find that this is

22

an applicable affirmative defense for Mr. Hartsell's claims for the same reasons as contributory negligence.

Lastly, Mr. Hartsell also contends that Defendants' affirmative defense of failure to mitigate damages is inconsistent with his claims because he only alleges intangible harms. Defendants maintain that Mr. Hartsell has alleged "physical harms," which are tangible, and that common law does not distinguish between these categories, making this defense appropriate. In support, Defendants rely on *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022). It is true that *Pierre* stated that "traditional tangible harms [include] physical harms," but, as contended by Mr. Hartsell, the *Pierre* court made this observation while considering whether plaintiffs had concrete injuries for purposes of standing. *See id.* (internal quotations omitted). Without more, the Court cannot that Defendants have adequately presented this affirmative defense.

For all these reasons, Mr. Hartsell's Motion for Partial Summary Judgment, construed as a Motion to Strike, is **GRANTED**. [DE 49].

## III.    MR. HARTSELL'S MOTION TO COMPEL [DE 46]

Mr. Hartsell also seeks an order compelling Defendants to disclose their financial information consistent with Mr. Hartsell's claim for punitive damages. Defendants oppose Mr. Hartsell's motion for three reasons. First, Defendants contend that such discovery is premature until their dispositive motion regarding qualified immunity is resolved. Beyond the motion's timing, Defendants argue that the financial discovery is not proportional to Mr. Hartsell's claims and is too intrusive. Defendants also maintain

that Mr. Hartsell can obtain sufficient information about their financial status by accessing their publicly-available salary information online.

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). "The party resisting such a motion bears the burden to show why a particular discovery request is improper" and must do so with specificity. *E.F. Transit, Inc. v. Ind. Alcohol & Tobacco Comm'n*, No. 1:13-cv-01927-WTL-MJD, 2015 WL 1013475, at *2 (S.D. Ind. Mar. 9, 2015); *see also Hills v. AT&T Mobility Servs., LLC*, 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D. Ind. July 22, 2021). But in the case of overly broad discovery requests or less than apparent relevancy, "the requesting party must establish relevancy." *Vajner v. City of Lake Station, Ind.*, No. 2:09-cv-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010).

Nevertheless, this Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines*, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996). As such, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

As discussed above, summary judgment has been denied as to Mr. Hartsell's punitive damages claims. Accordingly, Defendants' objection that the financial

discovery request is premature is moot. It is also undisputed that Defendants' financial condition is relevant to Mr. Hartsell's punitive damages claims. *See United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 327-28 (N.D. Ind. 2009) (collecting cases); *see also Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, No. 15-CV-9323, 2021 WL 229655, at *2 (N.D. Ill. Jan. 22, 2021) (stating that "there is no dispute—nor could there be—that the defendants' financial information is relevant to the issue of punitive damages"); *see also* Seventh Circuit Civil Pattern Jury Instruction 7.28 ("In determining the amount of any punitive damages, you should consider the following factors . . . [Defendant's financial condition[.]").

Yet "relevance alone does not translate into automatic discoverability . . . . An assessment of proportionality is essential." *Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, No. 119CV00165DRLSLC, 2021 WL 2910814, at *3 (N.D. Ind. July 12, 2021), *aff'd*, 340 F.R.D. 570 (N.D. Ind. 2021). Proportionality is determined by considering "the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1).

Defendants contend that the requested financial discovery is not proportional by arguing its relative unimportance and pointing to other ways to access relevant information. Defendants maintain that Mr. Hartsell's injuries are "not significant enough" to warrant this discovery and that the financial discovery obtained by Mr.

Hartsell will not significantly affect any punitive damages award because they are merely government employees.

But "saying so doesn't make it so . . . ." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). Other courts in this circuit have routinely ordered governmental employees to disclose their financial information. *See, e.g.,* Archie v. City of Chicago, No. 19 CV 4838, 2023 WL 2470841, at *5 (N.D. Ill. Mar. 9, 2023), *objections overruled*, No. 19-CV-4838, 2023 WL 3436345 (N.D. Ill. May 12, 2023) (ordering defendant police officers to turn over financial information); *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 309028, at *2 (N.D. Ill. Jan. 29, 2021) (same); *Tyree v. Ziemer*, 2019 WL 3945217, at *5 (C.D. Ill. Aug. 21, 2019) (ordering correctional employee defendants to produce financial discovery after the court's ruling on dispositive motions). Without more, the Court cannot find that Defendants' unilateral belief that the requested discovery is unimportant or unlikely to benefit Mr. Hartsell's claim due to their positions as public employees is persuasive.

Defendants also point Plaintiff to an online database containing their annual salary information, contending that this contains sufficient information for Plaintiff's punitive damages claim. But courts have found that the totality of a defendant's financial condition—or a party's "net worth," including "current assets and liabilities"—is relevant and discoverable. *Autumn Ridge Condo. Ass'n, Inc.,* 265 F.R.D. at 328; *see also Lanigan v. Babusch*, No. 11 CV 3266, 2011 WL 5118301, at *4 (N.D. Ill. Oct. 27, 2011). Discovery is thus permitted on an array of financial documents beyond a party's annual salary. *See Autumn Ridge Condo. Ass'n, Inc.,* 265 F.R.D. at 328-29 (permitting

discovery of financial records including statements of assets and liabilities, loan applications, a listing of real properties and their values, and tax returns).

Finally, Defendants also raise privacy concerns—general concerns based on the sensitive nature of the requested information and specific concerns based on Mr. Hartsell's prior convictions for burglary and theft. Of course, concerns about the disclosure of one's financial condition are justified. But a party's privacy concerns are sufficiently addressed when such information is produced pursuant to a protective order designating this information as attorney's eyes only. *See Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, No. 14 CV 273, 2017 WL 164335, at *2 (N.D. Ind. Jan. 17, 2017) (allowing discovery pertaining to the defendants' financial worth in part because of the parties' protective order that permitted "discovery to be designated as 'attorneys eyes only'"); *see also Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *5 ("making net worth information subject to an 'attorneys' eyes only' provision . . . strikes a proper balance between plaintiff's right to discover relevant information and the defendants' confidentiality interests."). Certainly, counsel for the defendants can seek the entry of a protective order to ameliorate any privacy concerns.

For these reasons, Mr. Hartsell's Motion to Compel is **GRANTED**. [DE 46].

IV.   **CONCLUSION**

For the reasons discussed above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** [DE 52]; Mr. Hartsell's Motion for Partial Summary Judgment, construed as a Rule 12(f) motion to strike, is **GRANTED** [DE 49]; and Mr. Hartsell's Motion to Compel is **GRANTED** [DE 46].

- Mr. Hartsell's Count IV failure-to-protect claims against Defendant John Doe I is **DISMISSED**. The other failure-to-protect and failure-to-intervene claims (Counts I, II, III, V, & VI) remain.

- Defendants' affirmative defenses of mitigation, contributory negligence, incurred risk, and good faith are **STRICKEN**. [DE 28].

- Defendants are **ORDERED** to produce information responsive to Mr. Hartsell's financial discovery requests no later than **October 31, 2023**. Responsive financial documents must be produced pursuant to a protective order designating such information as "attorneys' eyes only" as outlined in this Opinion and Order. Accordingly, the parties are **ORDERED** to file a stipulated protective order for the Court's consideration no later than **October 9, 2023**. A protective order template is available at https://www.innd.uscourts.gov/judges-info/MGG.

Lastly, this action is now **SET** for a telephonic status conference on **November 15, 2023**, at **11:30 a.m. (EST)** to discuss potential settlement options and setting a trial date. To connect to the conference, please call 833-568-8864, enter Meeting ID 160 4237 7854#, press # to skip Participant ID, and enter passcode 356255# at least five minutes before the start of the conference.

**SO ORDERED** this 30th day of September 2023.


s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge